SEAN P. NALTY, CA Bar No. 121253
sean.nalty@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
One Embarcadero Center, Suite 900
San Francisco, CA 94111
Telephone: 415-442-4810
Facsimile: 415-442-4870

BENJAMIN W. PERRY, *pro hac*
benjamin.perry@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
401 Commerce Street, Suite 1200
Nashville, TN 37219
Telephone: 615-254-1900
Facsimile: 615-254-1908

*Attorneys for Defendant Hobby Lobby Stores, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

SALEEM ERAKAT, on behalf of himself and all others similarly situated,

Plaintiffs,

v.

HOBBY LOBBY STORES, INC., an Oklahoma corporation,

Defendant.

Case No. 4:26-cv-00323-HSG

**DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Complaint Filed: January 12, 2026
Hearing Date: August 27, 2026
Hearing Time: 2:00 PM
Courtroom: 2
Judge: Haywood S. Gilliam, Jr.

Trial Date: None Set

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on August 27, 2026, at 2:00 PM, or as soon thereafter as this matter may be heard before the Honorable Judge Haywood S. Gilliam, Jr., in Courtroom 2 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Hobby Lobby Stores, Inc. ("Hobby Lobby") will and hereby does move this Court for an order dismissing this action in its entirety with prejudice.

This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The requested relief is appropriate for the following reasons:

1. The Court lacks subject matter jurisdiction over Plaintiff's claims because Plaintiff lacks Article III Standing. Plaintiff never alleges with specificity that he was specifically injured by any collection or disclosure of his data, relying instead on abstract statements regarding how trackers installed on Hobby Lobby's website function generally. Even if he had adequately alleged collection, Plaintiff suffered no legally cognizable harm.

2. Plaintiff fails to state a claim for which relief may be granted for each of his causes of action for separate and independent reasons.

DATED: June 5, 2026

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ *Benjamin W. Perry*
Sean P. Nalty
Benjamin W. Perry (admitted *pro hac vice*)

*Attorneys for Defendant Hobby Lobby Stores, Inc.*

**TABLE OF CONTENTS**


INTRODUCTION ........ 1

FACTUAL BACKGROUND ........ 3

LEGAL STANDARD ........ 3

ARGUMENT ........ 4

I. The Court Lacks Subject Matter Jurisdiction over Plaintiff's Claims Because Plaintiff Lacks Standing. ........ 4

II. Plaintiff's Consent Bars All of His Claims. ........ 9

III. Plaintiff's ECPA Claim Separately Fails as a Matter of Law. ........ 11

A. Hobby Lobby Was a Party to the Communications and Consented to the Alleged Interception. ........ 11

B. The Crime-Tort Exception Does Not Apply. ........ 12

C. Because There Was No Unlawful Interception, Plaintiff's Claims Under § 2511(1)(c)-(d) Fail. ........ 13

IV. Plaintiff Fails to State a Claim Under CIPA § 631. ........ 14

A. Hobby Lobby Is a Party to the Communications, and the Party Exemption Bars Plaintiff's Claim. ........ 14

B. Plaintiff Fails to Allege Interception, or Any Reading of Contents While in Transit. ........ 15

C. Plaintiff's Derivative Third- and Fourth-Clause Theories Fail. ........ 17

V. Section 638.51 is Inapplicable to Website Advertising and Analytics. ........ 18

A. The Trackers are Not a "Trap-and-Trace Device" or a "Pen Register" Under CIPA. ........ 18

B. CIPA's Pen Register Provisions Do Not Apply to Website Tracking. ........ 20

C. The Rule of Lenity Compels a Narrow Construction of § 638.51. ........ 21

VI. Plaintiff Fails to State a Claim for Intrusion Upon Seclusion or Violation of California's Constitutional Right to Privacy. ........ 22

VII. Plaintiff's UCL Claim Fails for Lack of Statutory Standing and Because the Predicate Claims Fail. ........ 24

VIII. Plaintiff's Unjust Enrichment Claim Fails Because California Does Not Recognize It as a Separate Cause of Action. ........ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abuelhawa v. Santa Clara Univ.*,
529 F. Supp. 3d 1059 (N.D. Cal. 2021) .......... 25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... 9

*Briskin v. Shopify Inc.*,
No. 21-CV-06269-PJH, 2026 WL 161441 (N.D. Cal. Jan. 21, 2026) .......... 17

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 12

*Cal. Med. Assn. v. Aetna Health of Cal. Inc.*,
14 Cal. 5th 1075 (2023) .......... 24

*Calhoun v. Google, LLC*,
645 F. Supp. 3d 916 (N.D. Cal. 2022) .......... 9

*Carolus v. Nexstar Media Inc.*,
No. 24-CV-07790-VC, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) .......... 4, 6

*Casillas v. Transitions Optical, Inc.*,
No. 23STCV30742, 2024 WL 4873370 (Cal. Super. Ct. Sept. 9, 2024) .......... 20

*Chabolla v. Classpass Inc.*,
129 F.4th 1147 (9th Cir. 2025) .......... 9

*Clausing v. S.F. Unified Sch. Dist.*,
221 Cal. App. 3d 1224 (1990) .......... 24

*Davis v. HSBC Bank Nev., NA.*,
691 F.3d 1152 (9th Cir. 2012) .......... 25

*Day v. Cal. Lutheran Univ.*,
No. 22-55825, 2023 WL 4893650 (9th Cir. 2023) .......... 24

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 25

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ........ 17

*Doe v. Talkiatry Mgmt. Servs*., *LLC*,
816 F. Supp. 3d 1206 (C.D. Cal. 2026) ........ 12

*Erakat v. Carvana Operations HC LLC*,
Case No. 4:26-cv-00263-AMO (N.D. Cal. Jan. 9, 2026) ........ 1

*Erakat v. The Nation Company, LLC*,
Case No. 3:26-cv-04048 (N.D. Cal. May 4, 2026) ........ 1, 3

*Esparza v. Gen. Digit. Inc.*,
No. CV 23-8223-KK-AGRx, 2024 WL 655986 (C.D. Cal. Jan. 16, 2024) ........ 17

*In re Facebook, Inc., Consumer Privacy User Profile Litig*.,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 24

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d at 607 ........ 8, 14

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011) ........ 4

*Gabrielli v. Insider, Inc*.,
No. 24-cv-01566 (ER), 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) ........ 8

*Gadomski v. Patelco Credit Union*,
No. 2:17-cv-00695-TLN-AC, 2022 WL 223878 (E.D. Cal. Jan. 25, 2022) ........ 8

*Garcia v. Anschutz Entm't Group, Inc*.,
---F. Supp. 3d---, No. 5:25-CV-02282-SSS-DTBx, 2026 WL 1278912 (C.D. Cal. 2026) ........ 11, 13

*In re Google Inc. Gmail Litig*.,
No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ........ 13, 14

*In re Google, Inc. Privacy Policy Litig*.,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ........ 22

*Hammerling v. Google, LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 23, 25

*Hammerling v. Google, LLC*,
No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) ........ 9

*Hicks v. PGA Tour, Inc*.,
897 F.3d 1109 (9th Cir. 2018) ........ 9

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) ... 22, 23, 24

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ... 19

*Int'l Fed'n of Prof'l and Tech. Eng'rs, Local 21, AFL–CIO v. Superior Court*,
42 Cal. 4th 319 (2007) ... 7

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ... 23

*Javier v. Assurance IQ, LLC*,
No. 4:20-cv-02860-JSW, 2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ... 9

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024) ... 5

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) ... 5

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) ... 1, 6, 8

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-cv-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025) ... 8

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ... 15

*Kwikset Corp. v. Superior Ct.*,
51 Cal. 4th 310 (2011) ... 24

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ... 9, 12

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Ct. L.A. Cty. Mar. 13, 2024) ... 21

*Lien v. Talkdesk, Inc.*,
No. 24-CV-06467-VC, 2025 WL 551664 (N.D. Cal. Feb. 19, 2025) ... 4

*Lightoller v. Jetblue Airways Corp.*,
No. 23-cv-00361-H-KSC, 2023 WL 3963823 (S.D. Cal. June 12, 2023) ... 2, 7

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ... 23

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 7

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 17

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 8

*Mitchener v. CuriosityStream, Inc.*,
815 F. Supp. 3d 845 (N.D. Cal. 2025) .......... 18, 19

*Napear v. Bonneville Int'l Corp.*,
669 F. Supp. 3d 948 (E.D. Cal. 2023) .......... 19

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) .......... 11

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) .......... 15

*Price v. Apple, Inc.*,
No. 21-cv-02846-HSG, 2022 WL 1032472 (N.D. Cal. Apr. 6, 2022) (Gilliam, J.) .......... 25

*R.C. v. Sussex Publishers, LLC*,
No. 24-CV-02609-JSC, 2025 WL 948060 (N.D. Cal. Mar. 28, 2025) .......... 17

*Reisberg v. Renaissance Learning, Inc.*,
No. 8:25-cv-01379-FWS-JDE, 2026 WL 1048242 (C.D. Cal. Feb. 17, 2026) .......... 13

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) .......... 4

*Rodriguez v. Autotrader.com, Inc.*,
No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) .......... 2, 7, 8

*Rodriguez v. Culligan Int'l Co.*,
No. 25-cv-00225-AJB-KSC, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) .......... 6

*Rodriguez v. Ink America Int'l Group LLC*,
No. 25STCV15350, 2025 WL 4034985 (Cal. Super. Ct. L.A. Cty. Dec. 10, 2025) .......... 21

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
No. 2:24-cv-06525-WLH-E, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) .......... 13

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Ct. L.A. Cty. Jan. 27, 2025) .......... 21

*Sanchez v. L.A. Dep't of Transp.*,
39 F.4th 548 (9th Cir. 2022) .......... 23

*Schallert v. Orkin LLC*,
No. 24STCV31244, 2025 WL 4332757 (Cal. Super. Ct. L.A. Cty. Dec. 15, 2025) .......... 20, 21

*Scharon v. Paramount Global*,
No. 25STCV10585, 2025 WL 2996812 (Cal. Super. Ct. L.A. Cty. Oct. 3, 2025) .......... 20, 22

*Silver v. Stripe Inc.*,
No. 4:20-cv-08196, 2021 WL 3191752 (N.D. Cal. July 28, 2021) .......... 9

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) .......... 23

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) .......... 21

*Sunga v. Naver Corp.*,
No. 21-cv-05143-HSG, 2026 WL 1102870 (N.D. Cal. April 23, 2026) (Gilliam, J.) .......... 5

*Tavernetti v. Superior Court*,
22 Cal. 3d 187 (Cal. 1978) .......... 14

*Torres v. Prudential Fin., Inc.*,
No. 22-CV-07456 (CRB), 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... 16

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 3, 4, 5

*Williams v. What If Holdings, LLC*,
No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 14, 22

*Wittbecker v. Cupertino Elec., Inc.*,
No. 20-cv-06217-BLF, 2021 WL 1400959 (N.D. Cal. 2021) .......... 24

*Zarif v. Hwareh.com, Inc.*
789 F. Supp. 3d 880 (S.D. Cal. 2025) .......... 13

*In re Zerbe*,
60 Cal. 2d 666 ( 1964) .......... 21

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 18, 19

**Statutes**

18 U.S.C. § 2511(1)(a)–(e) .......... 11

18 U.S.C. § 2511(2)(d) ........ 11
Cal. Bus. & Prof. Code, § 17200 ........ 25
Cal. Civ. Code § 3515 ........ 9
Cal. Penal Code § 631 ........ 2, 14, 17, 18, 19
Cal. Penal Code § 631(a) ........ 14, 15, 17
Cal. Penal Code § 638.50(b)-(c) ........ 18, 19
Cal. Penal Code § 638.51 ........ 2, 18, 19, 20, 21
Cal. Penal Code § 638.51(c) ........ 21
Cal. Penal Code §§ 638.52-638.53 ........ 20
Cal. Penal Code § 638.52(d)(3) ........ 20
CIPA ........ 3, 8, 9, 13, 14, 15, 17, 18, 19, 20, 21, 22
CIPA, (ii) ........ 18
ECPA, 18 U.S.C. § 2511 ........ 2, 3, 11, 12, 14, 19
ECPA Title I ........ 11
Privacy Act, Cal. Penal Code §§ 631-638.51 ........ 3
Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq ........ 2, 3, 9, 24, 25

**Other Authorities**

Assembly Bill 929 ........ 20
California Constitution ........ 2, 22, 24
California Constitution Article I, Section 1 ........ 3, 22
Federal Rules of Civil Procedure Rule 12(b)(1) ........ 1, 3
Federal Rules of Civil Procedure Rule 12(b)(6) ........ 1, 4

**INTRODUCTION**

This case is part of a wave of cookie-tracking litigation[1] in which professional plaintiffs target companies for the commonplace use of analytics and advertising tools on their websites. Hobby Lobby is an Oklahoma-incorporated and -headquartered retailer of arts, crafts, and home décor. Plaintiff seeks to hale Hobby Lobby into California court based on the allegation that its globally accessible website, www.hobbylobby.com ("the Website"), incorporated standard third-party analytics and advertising tools—the same categories of tools used by the vast majority of commercial websites on the Internet.

First, Plaintiff lacks Article III standing. He has not alleged a concrete, particularized injury traceable to Hobby Lobby's conduct. The Ninth Circuit's recent decision in *Popa v. Microsoft Corp.*, where the court affirmed the dismissal of a materially identical website-tracking class action for lack of Article III standing, is directly on point. 153 F.4th 784 (9th Cir. 2025). There, the court rejected the plaintiff's reliance on the common-law privacy torts of intrusion upon seclusion and public disclosure of private facts, holding that the data tracked—revealing nothing more than the products that interested the plaintiff—was "not the type of private information that the law has historically protected" and bore no resemblance to the "highly offensive" invasions those torts were designed to redress. *Id.* at 787, 791. The same is true here. The First Amended Class Action Complaint ("FAC") does not allege with specificity that the data captures were generated from Plaintiff's own browsing sessions or devices, and the exhibits—referring generically to a "Chrome DevTools Network capture" (*see, e.g.*, FAC, ¶ 190) and a "Wireshark capture" (*see, e.g.*, *id*. at ¶ 191)—leave unclear whether Plaintiff personally experienced the data flows depicted. Moreover, the metadata at issue—IP addresses, browser details, and device information—does not implicate a legally protected privacy interest. *See, e.g., Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025). Nor has Plaintiff explained how any communications Hobby Lobby allegedly intercepted bear a

[1] Plaintiff appears to be a "tester" who has filed multiple materially identical actions in this District. *See, e.g., Erakat v. Carvana Operations HC LLC*, Case No. 4:26-cv-00263-AMO (N.D. Cal. Jan. 9, 2026) (alleging the defendant violated his privacy through identical tracking technology claims); *Erakat v. The Nation Company, LLC*, Case No. 3:26-cv-04048-VC (N.D. Cal. May 4, 2026) (same).

sufficiently personal relationship to him to create a protected privacy interest. *Lightoller v. Jetblue Airways Corp.*, No. 23-cv-00361-H-KSC, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023). Separately, Plaintiff, as a tester, subjectively experienced no harm when his data was collected exactly as he anticipated. *Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025).

Even if Plaintiff had standing, his claims independently fail on the merits. Plaintiff expressly consented to the conduct at issue when, as shown in the technical exhibits attached to the FAC, he continued to use the Website after receiving notice of Hobby Lobby's use of the Trackers and an opportunity to opt out, and further impliedly consented through his conduct as a tester—each prong of that consent independently bars all of his claims. Plaintiff's Electronic Communications Privacy Act ("ECPA") claim fails because Hobby Lobby was a party to the communications and consented to any interception, because the crime-tort exception does not apply absent a criminal or tortious purpose independent of the interception itself, and because his derivative claims under § 2511(1)(c)-(d) fail without an unlawful interception. Plaintiff's Cal. Penal Code § 631 claim fails because Hobby Lobby is a party to the communications and the party exemption bars the claim, because Plaintiff has not adequately alleged that any contents were read while "in transit," and because his derivative third- and fourth-clause theories collapse without a predicate violation. His Cal. Penal Code § 638.51 claim fails because the Trackers are not a "trap and trace device" or a "pen register," § 638.51 does not apply to websites, and the rule of lenity compels narrow construction. His California constitutional and intrusion upon seclusion claims fail because he has not alleged a legally protected privacy interest, because routine commercial data collection is not "highly offensive," and because the California Constitution provides no private right of action for money damages. His UCL claim fails for lack of statutory standing because he has not alleged any economic injury, and because he has not alleged any unlawful, unfair, or fraudulent practice—particularly where the predicate claims fail and the challenged practices were disclosed. And his unjust enrichment claim fails because California does not recognize it as a standalone cause of action and because it is duplicative of his other claims.

The Court should dismiss every claim with prejudice.

## FACTUAL BACKGROUND

Plaintiff filed a Complaint on January 12, 2026, alleging that Hobby Lobby "receiv[ed] Plaintiff's and Class Members' browsing and interaction data" without consent and aggregated this information into cross-site profiles for targeted advertising and analytics. ECF No. 1, ¶ 12. On April 20, 2026, Hobby Lobby filed a Motion to Dismiss. ECF No. 25. Then, on May 4, 2026—the same day Plaintiff filed suit in another CIPA case, *Erakat v. The Nation Company, LLC*, Case No. 3:26-cv-04048 (N.D. Cal. May 4, 2026)—Plaintiff filed a First Amended Class Action Complaint (the "FAC"). ECF No. 27. By deploying third-party trackers (collectively "the Trackers"), Plaintiff claims Hobby Lobby collected both (1) the contents of users' communications, including URLs that identify content the user is reading, product category data, and specific user interactions; and (2) users' non-content dialing, routing, addressing, and signaling ("DRAS") information, including his page views, session duration, referrer URLs, IP address, browser and device details, and other interaction metadata. FAC ¶ 3. According to Plaintiff, Hobby Lobby then disclosed that information to third parties such as Google, Meta, ScarabResearch, Inc., MNTN, Inc., and Pinterest. *Id.* at ¶ 9. According to Plaintiff, the Trackers use "invisible image pixels, JavaScript calls, or beacon APIs" to collect this information when users visit the Website. *Id.* at ¶ 122. Plaintiff characterizes this "digital fingerprinting" process as violating the ECPA, 18 U.S.C. § 2511; the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631-638.51; Article I, Section 1 of the California Constitution; the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; and as constituting common law intrusion upon seclusion and unjust enrichment. *Id.* at ¶¶ 263-317. Noticeably absent from the FAC is any allegation that Plaintiff purchased anything from Hobby Lobby or created a Hobby Lobby account.

## LEGAL STANDARD

### A. Rule 12(b)(1)

To show subject-matter jurisdiction, a plaintiff bears the burden of showing that they have Article III standing to assert their claims. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021). To establish Article III standing, a plaintiff must demonstrate that they suffered "an injury in fact that is concrete, particularized, and actual or imminent," that "was likely caused by the defendant,"

and that "would likely be redressed by judicial relief." *Id.* at 423 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992)).

### B. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In determining a complaint's adequacy, a court must disregard conclusory allegations and legal conclusions and determine whether the remaining "well-pleaded factual allegations" suggest that the plaintiff has a plausible—as opposed to merely conceivable—claim for relief. *Id*. at 679. On a motion to dismiss, the court does not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

## ARGUMENT

### I. The Court Lacks Subject Matter Jurisdiction over Plaintiff's Claims Because Plaintiff Lacks Standing.

Plaintiff cannot establish Article III standing for two independent reasons: he never alleges that he personally was harmed, and the routine browsing information and metadata he describes implicates no legally protected privacy interest. To establish standing, a plaintiff must demonstrate an "injury in fact that is concrete, particularized, and actual or imminent," that "was likely caused by the defendant," and that "would likely be redressed by judicial relief." *TransUnion LLC*, 594 U.S. at 423 . Where a privacy interest is allegedly implicated, "whether that interest is infringed depends on whether the information at issue is actually personal and private" and whether it bears a "'close relationship' to a 'harm traditionally recognized as providing a basis for a lawsuit in American courts.'" *Carolus v. Nexstar Media Inc.*, No. 24-CV-07790-VC, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (citations omitted); *see also Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 926-27 (C.D. Cal. 2025); *Lien v. Talkdesk, Inc.*, No. 24-CV-06467-VC, 2025 WL 551664, at *1 (N.D. Cal. Feb. 19, 2025).

Here, Plaintiff has not even alleged with specificity that he was personally harmed. He provides no factual support for any specific communications or data of his own that was collected,

leaving to speculation whether any tracking tools were actually dropped on his device and framing all data collection in the abstract. Courts dismiss privacy claims where a plaintiff alleges that the information collected *could* be private or personal but fails to allege that any information actually collected *was* private or personal to him. *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1043-44 (S.D. Cal. 2024); *Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 950-51 (S.D. Cal. 2024); *see also Sunga v. Naver Corp*., No. 21-cv-05143-HSG, 2026 WL 1102870 at *15 (N.D. Cal. April 23, 2026) (Gilliam, J.) (plaintiffs lacked standing for claims against defendants who lacked a nexus to the application from which any harm arose). That is precisely Plaintiff's pleading here. Even the sensitive communications that Hobby Lobby allegedly intercepted are framed as hypothetical. *See, e.g.*, FAC, ¶¶ 13, 197, 210 ("The contents intercepted and acquired include . . . terms entered by **the user, including for example** 'jesus' and 'jesus saves')") (emphasis added). Plaintiff never clearly states that he himself was subject to tracking while he searched for religiously themed products. The technical exhibits attached as Figures 9-25 consist of Chrome DevTools, Wireshark, and Fiddler captures Plaintiff took of the Website, but the FAC merely describes how these tools work *in general* without describing Plaintiff's *personal* experience. *See id.* at Figures 9-25.

Regardless, even if Plaintiff had alleged such sharing of his own data, those allegations are insufficient to impart standing under binding Ninth Circuit authority. In *Popa*, the Ninth Circuit affirmed the dismissal for lack of Article III standing of a putative class action alleging that a retailer deployed tracking technology on its website to capture and transmit a visitor's interactions. 153 F.4th at 793-95. The court held that "*TransUnion* requires a court to assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system," *id.* at 791, and that this standing inquiry must be "particularized to a plaintiff's circumstances and benchmarked to a specific tort," *id.* A plaintiff must therefore identify "a close historical or common-law analogue for [the] asserted injury"; a bare statutory violation will not suffice, because "an injury in law is not an injury in fact." *Id.* at 790 (quoting *TransUnion*, 594 U.S. at 427).

*Popa* leaves no doubt about the gulf between Plaintiff's allegations and the harms the common law has ever treated as actionable. In assessing whether the plaintiff there had suffered a concrete injury, the Ninth Circuit measured her claims against the very illustrations the Restatement

uses to define the relevant privacy torts—for intrusion upon seclusion, a voyeur who "rents a room in a house adjoining B's residence, and for two weeks looks into the windows of B's upstairs bedroom through a telescope taking intimate pictures with a telescopic lens," and for public disclosure of private facts, one who "publishes, without B's consent, a picture of B nursing her child." 153 F.4th at 791 (quoting Restatement (Second) of Torts §§ 652B cmt. b, illus. 2, 652D cmt. c, illus. 10). Against that baseline, the court held that monitoring a consumer's website activity was not "remotely similar" to any actionable invasion, but was instead "most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular." *Id.* So too here. Whatever Plaintiff's rhetoric, the deployment of standard analytics and advertising tags that record which arts-and-crafts products he viewed bears no resemblance to the telescopic surveillance of a bedroom or the publication of an intimate photograph—and a harm that comes nowhere near those paradigms cannot supply the concrete injury Article III demands.

Aside from a few references to potential searches or products referenced in the Complaint, the vast majority of the data collection about which Plaintiff complaints amounts to metadata. But recent decisions from this District confirm that routine browsing metadata does not bear a close enough relationship to traditionally recognized privacy harms to establish standing in this context. In *Khamooshi v. Politico LLC*, Magistrate Judge Sallie Kim dismissed similar tracking technology claims, holding that the collection of browser and device data, IP addresses, and other identifying information does not "implicate[] a legally protectable privacy interest." 786 F. Supp. 3d at 1179-80. Judge Chhabria reached the same conclusion in *Carolus*, 2025 WL 1338193, at *1-2. Courts consistently hold that collection of IP addresses, browser details, visited URLs, referrer paths, timestamps, and interaction events do not give rise to a privacy injury. *See Rodriguez v. Culligan Int'l Co.*, No. 25-cv-00225-AJB-KSC, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) (dismissing for lack of standing where data included IP address, operating system, browser data, geolocation, and device signature).

This Court's decision in *Ji v. Naver Corporation* is also directly on point. No. 21-cv-05143-HSG, 2023 WL 6466211 (N.D. Cal. Oct. 3, 2023) (Gilliam, J.). There, the plaintiffs alleged the defendant collected their "user and device identifiers," *id.* at *4—some of the same categories of data

alleged here, *see* FAC, ¶¶ 12, 34, 106, 132, 181, 281. This Court held that the momentary, technical acquisition of those identifiers in the ordinary course of a user's visit did not "intrude[] upon Plaintiffs' reasonable expectations of privacy or . . . prove highly offensive to a reasonable person," and thus did not give rise to a concrete Article III injury. *Ji*, 2023 WL 6466211, at *4. Plaintiff's allegations are materially indistinguishable: he affirmatively chose to visit Hobby Lobby's public website, his browser automatically transmitted the same categories of metadata *Ji* held non-actionable, and he pleads no downstream use or disclosure that could transform routine analytics and advertising into a traditionally actionable privacy harm, nor does he plead the collection of biometric data, property harm to his device, or diminution of value that this Court held sufficient to defeat the motion to dismiss in *Ji*.

Likewise, a lone allegation that Plaintiff entered search queries, without any further details regarding the contents submitted via the search bar, including any personal information, is insufficient to establish a protected privacy interest. *Lightoller*, 2023 WL 3963823, at *4. The FAC's sole evidentiary showing consists of network captures Plaintiff generated by running Chrome DevTools, Wireshark, and—most pointedly—Fiddler, a man-in-the-middle proxy Plaintiff deployed to intercept his own browser's outbound traffic "at the proxy level while in transit." FAC, ¶¶ 191-92, 198, 203-05, 216-17, 222-29, 230, 243-44, 250, & Figs. 9-25. A plaintiff who installs an expert decrypting proxy on his own device to capture metadata he then describes as a privacy violation has not suffered an injury "fairly traceable" to the defendant within the meaning of *Lujan*, 504 U.S. at 560–61; he has manufactured and self-captured the very transmission on which he sues. That is the paradigmatic tester posture *Ji* rejected.

Even if the collection of Plaintiff's metadata could *objectively* be harmful, it was not subjectively harmful to this Plaintiff. Traditionally, privacy harms require (1) a legally protected privacy interest, (2) a reasonable expectation of privacy under the circumstances, and (3) a serious invasion of the privacy interest. *Int'l Fed'n of Prof'l and Tech. Eng'rs, Local 21, AFL–CIO v. Superior Court*, 42 Cal. 4th 319, 338 (2007) (citation omitted). Plaintiff is a website tester who deliberately seeks out websites with third-party trackers expecting his metadata to be collected. He never expected his metadata to remain private, and the collection at issue bears no close relationship

to a traditionally recognized harm. *Id*. The Central District reached the same result in *Rodriguez v. Autotrader.com, Inc*., *sua sponte* dismissing a tester's CIPA claim because the plaintiff "actively [sought] out privacy violations" and therefore "'had no expectation of privacy' when she visited [the] Defendant's website." 2025 WL 1085787, at *1.

Plaintiff's allegations of "emotional harm, including anxiety, indignity, and concern over being unknowingly tracked" and "commercial exploitation" fare no better: a person who expects to be tracked is not emotionally harmed or commercially exploited when tracking occurs. FAC, ¶¶ 35, 309.[2] Vague allegations of emotional distress do not establish Article III standing. *Gadomski v. Patelco Credit Union*, No. 2:17-cv-00695-TLN-AC, 2022 WL 223878, at *4 (E.D. Cal. Jan. 25, 2022). And mere loss of control of one's information is not a concrete injury unless the plaintiff can identify a protectable privacy interest. *Khamooshi*, 786 F. Supp. 3d at 1179 ("Otherwise, every data breach (or any situation in which one loses control of information) would confer standing, regardless of whether private information is exposed.") (quoting *I.C. v. Zynga, Inc*., 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022)). *Accord Gabrielli v. Insider, Inc*., No. 24-cv-01566 (ER), 2025 WL 522515, at *3-5 (S.D.N.Y. Feb. 18, 2025) (disclosure of an IP address "does not bear a sufficiently close relationship" to common law privacy torts).

In sum, Plaintiff attempts to conjure an injury out of everyday website management based on a pretextual visit. "The mere 'collection of basic contact information by . . . software[,] or where the plaintiffs merely visited the website[,] are not concrete harms.'" *Kishnani v. Royal Caribbean Cruises Ltd*., No. 25-cv-01473-NW, 2025 WL 1745726, at *5 (N.D. Cal. June 24, 2025) (quoting *Smidga v. Spirit Airlines, Inc*., No. 2:22-CV-1578-MJH, 2024 WL 1485853, at *4 (W.D. Pa. Apr. 5, 2024) (collecting cases)). The Court lacks subject matter jurisdiction.

---

[2] Plaintiff points to *In re Facebook, Inc. Internet Tracking Litig*., as proof that monetization of another's personal data constitutes actionable economic harm under federal law as a "misappropriation-like injury" without evidence of direct financial loss. But the *In re Facebook* court never held that misappropriation of another's data, on its own, per se satisfies Article III standing. Instead, in that case, Facebook sold sensitive PII to advertisers for a profit after falsely guaranteeing users that it would not do so. 956 F.3d 589, 600-01 (9th Cir. 2020). That is entirely distinguishable from Plaintiff's allegation that Hobby Lobby deployed standard web trackers to monitor users for advertising and analytics purposes. *See Mikulsky v. Noom, Inc*., 682 F. Supp. 3d 855, 865 (S.D. Cal. 2023) (distinguishing the allegations in *Facebook* from assertions that a defendant collected general "personal information").

## II. Plaintiff's Consent Bars All of His Claims.

Plaintiff's claims fail because he consented to the use of the Trackers. The FAC's conclusory assertion that the Trackers transmit data automatically before users can consent, *see, e.g.*, FAC, ¶ 211, is contradicted by the FAC itself.

"A person who consents to an act is not wronged by it." Cal. Civ. Code § 3515. Courts regularly reject similar claims where the plaintiff's actions demonstrate consent. *See, e.g.*, *Hammerling v. Google, LLC*, No. 22-17024, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (consent is a defense to invasion of privacy); *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1051-52 (N.D. Cal. 2025) (dismissing invasion of privacy and CIPA claims on basis of consent); *Calhoun v. Google, LLC*, 645 F. Supp. 3d 916, 928 (N.D. Cal. 2022) (consent a defense to contract, implied covenant, and UCL claims); *Silver v. Stripe Inc.*, No. 4:20-cv-08196, 2021 WL 3191752, at *4-5 (N.D. Cal. July 28, 2021) (consent via privacy disclosures defeated CIPA claims); *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 n.6 (9th Cir. 2018) (affirming dismissal of unjust enrichment claim based on consent).

"Consideration of consent is appropriate on a motion to dismiss where lack of consent is an element of the claim." *Stripe Inc.*, 2021 WL 3191752, at *2. Here, lack of consent is either an element of each cause of action or an affirmative defense. *Javier v. Assurance IQ, LLC*, No. 4:20-cv-02860-JSW, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021) ("consent generally defeats privacy claims"). Consent to a website's data practices may be established when (1) the website provides reasonably conspicuous notice of the terms and conditions, and (2) the user takes an action that unambiguously manifests assent. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). In assessing conspicuousness, courts consider the placement of the notice, font size, style, and overall design. *Chabolla v. Classpass Inc.*, 129 F.4th 1147, 1155 (9th Cir. 2025).

To enter the Website and submit content (such as a search query) as alleged in the FAC, *see, e.g.*, FAC, ¶ 267, Plaintiff must have been presented with Hobby Lobby's Privacy & Terms. Indeed, Figure 9 of the FAC—a capture reflecting the Google Tag Manager—shows that the Privacy & Terms were presented prominently at the bottom of the page upon entering the Website. The Privacy & Terms were hyperlinked in bold and underlined font that contrasted against the white background

as well as the font used for non-hyperlinked text. FAC at Figure 9. A link to the Website's Cookie Settings for users to opt out appeared in a conspicuous red box. *Id*.

The Website unambiguously discloses the use of advertising and analytics tools. As further established by Figure 9 of the FAC, the Website's cookie banner, presented when users enter the Website, reads: "This website uses cookies. You may opt out of certain cookies by clicking the 'Cookie Settings' button. By continuing to navigate this website, you represent that you consent (and are legally able to give consent) to our Privacy & Terms." *Id*. at Figure 9. Hobby Lobby's Privacy & Terms disclose that Hobby Lobby collects "Internet or Other Electronic Network Activity Information" to provide goods or services, complete transactions with consumers, and provide advertising and marketing services. *See* Request for Judicial Notice ("RJN") Ex. A (Privacy Policy) (Last Updated Date: June 30, 2023). The Privacy & Terms further disclose: "We use cookies to deliver and enhance the use of the Service, and inform, optimize, and serve ads based on your history with our websites. … You can opt out of this by clicking 'Do Not Sell or Share My Personal Information' or enabling the Global Privacy Control available in certain browsers or extensions." *Id*. They also explain the means of collection: "We receive and store certain types of information automatically when you interact with our Service, emails, and online advertising. This information may include your IP address, browsing behavior while on our site, browser and device characteristics, referring URLs, the operating system you are using, and third-party links, advertisements, offers from our partners that you click on or other content that you may access or download from the Service, and other information collected by our third-party vendors." *Id*. Finally, regarding sharing: "We may disclose your information with our service providers that support various aspects of our business operations (e.g., web hosting, storage, shipping, fulfillment, mobile marketing, analytics providers, call center service providers, sweepstakes vendors, and payment processors." *Id.*

The Privacy & Terms make explicit that continued use constitutes acceptance, and provide multiple opt-out mechanisms. Because these disclosures appear before a user can enter any content, Hobby Lobby obtained informed consent to its tracking and data-sharing practices. These disclosures defeat any claim that Plaintiff was unaware of, or did not consent to, the challenged practices.

Beyond the notice available to the average user, Plaintiff's actions as a "tester" who actively seeks out websites that deploy trackers, make clear that he knew and expected his information would be collected. Accordingly, Plaintiff also implicitly consented to the alleged collection of information by the Trackers.

## III. Plaintiff's ECPA Claim Separately Fails as a Matter of Law.

To survive a motion to dismiss under Title I of the ECPA, Plaintiff must plausibly allege Hobby Lobby intentionally intercepted, used, or disclosed to another person the contents of a wire, oral, or electronic communication. 18 U.S.C. § 2511(1)(a)–(e). Plaintiff's ECPA claim fails for two independent reasons. First, Hobby Lobby was a party to the communications at issue and consented to any alleged interception, bringing the conduct squarely within the ECPA's one-party consent rule. 18 U.S.C. § 2511(2)(d). The crime-tort exception to that rule does not apply because Plaintiff has not alleged any criminal or tortious purpose separate and independent from the alleged interception itself. Second, because there was no unlawful interception, Plaintiff's derivative claims under § 2511(1)(c)–(d) for downstream disclosure and use of intercepted contents necessarily fail as well.

### A. Hobby Lobby Was a Party to the Communications and Consented to the Alleged Interception.

The ECPA is a one-party consent statute. *See Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1095 (W.D. Wash. 2024) (collecting cases). Under the ECPA, it is not unlawful to intercept a communication where a party to the communication has consented unless such interception is for the purpose of committing a criminal or tortious act. 18 U.S.C. § 2511(2)(d). Hobby Lobby voluntarily deployed the Trackers on its Website. *See* FAC, ¶ 2. It was therefore a party to the alleged communication, consented to the interception, and falls within the ECPA's one-party consent rule.[3] Courts routinely hold that a website operator is a party to communications sent to its own website, and that any alleged interception by that operator is not actionable. *Garcia v.*

---

[3] Plaintiff does not contest this fact. Plaintiff argues only that Google, Meta, ScarabResearch, MNTN, and Pinterest are not "a party to the underlying communications between users and the Website" and therefore may not rely on the party exception. FAC, ¶¶ 200, 213, 225, 240, 254. But Plaintiff has not sued those entities, only Hobby Lobby, which was a party to Plaintiff's communications with Hobby Lobby's website.

*Anschutz Entm't Group, Inc.*, ---F. Supp. 3d---, No. 5:25-CV-02282-SSS-DTBx, 2026 WL 1278912, at *5 (C.D. Cal. 2026).

**B. The Crime-Tort Exception Does Not Apply.**

Although one-party consent does not apply where a communication is intercepted for the purpose of committing any criminal or tortious act, that exception is inapplicable here. In *Planned Parenthood Fed'n of Am., Inc. v. Newman*, the Ninth Circuit explained that a recording has a criminal or tortious purpose under § 2511(1) only if it is "done for the purpose of facilitating some further impropriety, such as blackmail." 51 F.4th 1125, 1135-36 (9th Cir. 2022) (quoting *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)). In other words, the criminal or tortious purpose must be separate and independent from the act of the recording, and the plaintiff must allege that the "primary motivation or a determining factor in [the interceptor's] actions has been to injure plaintiffs tortiously." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021). Whether the interception itself violated some law is not what matters. *Newman*, 51 F.4th at 1136 ("the independent purpose must be 'essential to the actual execution of an illegal wiretap ... [and] directly facilitate the criminal conduct.'") (citing *U.S. v. McTiernan*, 695 F.3d 882, 890 (9th Cir. 2012), *Caro v. Weintraub*, 618 F.3d 94, 99–100 (2d Cir. 2010)).

The FAC does not satisfy that standard. Plaintiff alleges only that Hobby Lobby used the Trackers to collect website visitors' content and non-content data for analytics and advertising, identity resolution, customer matching, behavioral profiling, recommender optimization, and audience-based advertising. FAC, ¶¶ 24, 26, 55, 177. Those purposes are ordinary commercial purposes, not criminal or tortious activity. Nor do they reflect that Hobby Lobby had intent to injure Plaintiff. *Doe v. Talkiatry Mgmt. Servs., LLC*, 816 F. Supp. 3d 1206, 1210 (C.D. Cal. 2026).

Courts have dismissed ECPA theories premised on advertising and monetization rather than an independent purpose to injure. In *Lakes v. Ubisoft*, the court dismissed all ECPA claims and held that the crime-tort exception did not apply where the plaintiffs alleged Ubisoft implemented the Meta tracking pixel to collect and disclose users' communications. 777 F. Supp. 3d at 1057 . Although profit motive may coexist with criminal or tortious intent in theory, the *Lakes* court held that it is not proven merely because an ECPA defendant intends to profit by exploiting users' PII. *Id.* Plaintiff

alleges only that Hobby Lobby's purpose was "commercially exploiting the California consumer market through the Website." FAC, ¶ 25 Even if Plaintiff could prove a predicate violation of law, this would not show Hobby Lobby's *purpose* was to perpetuate torts on millions of users. *In re Google Inc. Gmail Litig*., No. 13-MD-02430-LHK, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014).

Plaintiff cannot avoid this result by labeling the alleged data collection itself an invasion of privacy. Plaintiff has not identified any crime or tort *separate and independent* from the alleged use of the Trackers. *See Garcia*., 2026 WL 1278912, at *6 ("there do not seem to be any tortious or criminal act independent of the collection, interception, and distribution of Plaintiff's data."). He cannot satisfy the exception by restating the wiretap theory as a tort or as a state wiretap violation. *See Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-cv-06525-WLH-E, 2025 WL 1141168, at *13 (C.D. Cal. Feb. 27, 2025) ("Allowing plaintiffs to bootstrap an alleged CIPA violation to invoke the Crime-Tort Exception in ECPA–or vice versa–would allow the exception to swallow the rule."); *Reisberg v. Renaissance Learning, Inc*., No. 8:25-cv-01379-FWS-JDE, 2026 WL 1048242, at *6 (C.D. Cal. Feb. 17, 2026) (failure to adequately allege a standalone invasion of privacy claim means the crime-tort exception does not apply).

Cases applying the exception typically involve disclosure of personal health information or other sensitive data giving rise to an independent privacy violation. *Zarif v. Hwareh.com, Inc*. 789 F. Supp. 3d 880, 895 (S.D. Cal. 2025) ("[t]he picture is murkier if a defendant is capturing health information on a website.") (quotations omitted). The FAC at most alleges routine Internet metadata and the browsing of home décor products—well short of that bar.

### C. Because There Was No Unlawful Interception, Plaintiff's Claims Under § 2511(1)(c)-(d) Fail.

Plaintiff's theory of liability under § 2511(1)(c)-(d) for "downstream disclosure and use" of intercepted contents by third parties fails because Hobby Lobby did not disclose or use any *unlawfully intercepted* communication. Liability under § 2511(1)(c)-(d) attaches only to a person who discloses or uses information obtained through an interception that violated the statute. Because Hobby Lobby's initial collection is lawful under the party exception (as set forth above), any

subsequent disclosure cannot give rise to derivative liability. *See In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *16-17, n.13.

## IV. Plaintiff Fails to State a Claim Under CIPA § 631.

The California Supreme Court has explained that § 631(a) proscribes three distinct and mutually independent patterns of conduct: (1) "intentional wiretapping," (2) "willfully attempting to learn the contents or meaning of a communication in transit," and (3) "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti v. Superior Court*, 22 Cal. 3d 187, 192 (Cal. 1978). Courts refer to these as the first, second, and third clauses of § 631(a), and to a fourth clause that imposes derivative liability on anyone who "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the" first three acts. Cal. Penal Code § 631(a). The FAC neither invokes nor could invoke the first clause, which reaches only telephonic wiretapping and "does not apply to the context of the internet." *Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (collecting cases). Plaintiff instead premises his claim on the second clause—alleging that the trackers operated by Google, Meta, ScarabResearch, MNTN, and Pinterest (the "Third Parties") read or learned the contents of his communications with the Website in transit—and seeks to hold Hobby Lobby liable both directly and, under the fourth clause, for aiding the Third Parties. FAC, ¶¶ 51, 56, 273. So framed, the claim fails at every step: Hobby Lobby is a party to the communications and cannot be liable for intercepting them; Plaintiff does not allege that anyone read or learned the contents of a communication while in transit; and his derivative third- and fourth-clause theories collapse without a viable second-clause violation.

### A. Hobby Lobby Is a Party to the Communications, and the Party Exemption Bars Plaintiff's Claim.

The second clause reaches only a third party who intercepts a communication to which it is not a party; it does not reach a party to the communication itself. Like the ECPA, CIPA contains an "exemption from liability for a person who is a 'party' to the communication." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 607 . Hobby Lobby is indisputably a party to the communications at issue: every transmission Plaintiff describes is a communication between the

user's browser and Hobby Lobby's own Website. FAC, ¶¶ 13, 53. A party to a communication cannot "intercept" it within the meaning of § 631(a), and courts routinely dismiss CIPA claims against the website operator on that basis. *See Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1120-21 (S.D. Cal. 2023) (dismissing CIPA claim because the defendant was the intended recipient of the communications sent to its website). Recognizing this defect, Plaintiff does not allege that Hobby Lobby itself eavesdropped; he alleges that Hobby Lobby "caused," "aided," and "conspired with" the Third Parties to do so. FAC, ¶¶ 51, 56, 273. But the party exemption bars precisely that theory—a claim premised on the interception of a party's own communications—and Plaintiff's effort to recast Hobby Lobby as a conspirator depends entirely on an underlying violation by the Third Parties that, as shown below, he has not pleaded.

**B. Plaintiff Fails to Allege Interception, or Any Reading of Contents While in Transit.**

The second clause of Section 631(a) requires that the communication be acquired—and that the interceptor read or learn its contents—"while the same is in transit or passing over any wire, line, or cable." Cal. Penal Code § 631(a). A communication "must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). The First Amended Complaint does not, and cannot, satisfy this requirement, because its own description of how the Trackers operate establishes that any "reading" of contents occurs after the user-to-Website communication has already arrived, rendered, and come to rest on the user's device—not while that communication is in transit.

By Plaintiff's own account, the Trackers do not capture anything off the wire between the user and Hobby Lobby. Instead, they "operate by initiating HTTP or HTTPS requests using either the GET or POST method from the user's browser to external servers controlled by the Third Parties." FAC ¶ 75. Those requests are directed to the Third Parties' own endpoints—for example, to px.mountain.com and to ct.pinterest.com/v3/, FAC ¶¶ 110, 111, 250—and Plaintiff's Wireshark exhibits confirm that this "tracking traffic … is routed from the user's device to [the Third Party's] infrastructure at the network layer." FAC ¶¶ 204, 217, 230, 244. These are new, separately addressed communications for which the Third Party is the intended recipient, not an interception of the original user-to-Website communication "while the same is in transit." One does not "intercept" a message

to which one is simply the addressee. When a user's browser initiates an HTTP request to Hobby Lobby's server, the server responds by delivering the full-page payload—including any embedded scripts—back to the user's browser, and any subsequent requests triggered by those scripts are new communications initiated by the browser, not an acquisition of the original communication in transit. Plaintiff's allegation that data transmissions occurred "before the requested pages finished loading," FAC ¶ 115, conflates the temporal overlap of page rendering with the legal concept of interception during transmission.

The mechanics Plaintiff pleads confirm the point. Plaintiff alleges that the Trackers work by "extracting the substantive content of the rendered Website page" and packaging it into outbound requests, FAC ¶ 109, that each Tracker "executes as software code on users' devices" to capture that content, FAC ¶¶ 199, 212, 224, 239, 253, and "transmitt[ed] … to the Third Parties' endpoints." FAC ¶ 109. A page cannot be rendered until the underlying user-to-Website communication has already been transmitted, received, and displayed on the user's own device. By Plaintiff's own description, then, the transit of the underlying communication had ended—and its contents had come to rest locally on the user's machine—before any script read anything. Indeed, Plaintiff's contention that the transmissions occur "before the requested page has finished rendering," FAC ¶ 211, cannot be reconciled with his repeated allegation that the very same content is scraped from the rendered page: if nothing has rendered, there is no product name, title, or price for the script to read, and if the content is read from a rendered page, the communication necessarily arrived first. Plaintiff's Scarab allegations make the deficiency starkest of all, because that Tracker is alleged merely to transmit "the full URL of the previously viewed page in the user's session," FAC ¶ 223—stored, after-the-fact information about a past navigation, which by definition is not a communication being read while in transit.

Moreover, interception in transit, standing alone, is not enough. The interceptor must actually read or attempt to read the contents while the communication is in transit; collecting data in real time and storing it for later use does not violate the second clause. *See Torres v. Prudential Fin., Inc.*, No. 22-CV-07456 (CRB), 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) ("Even if [third-party] software intercepts the contents of Plaintiffs' communications in real time and stores the recording .

. . nothing . . . plausibly indicates that [the third party] reads or attempts to read the contents . . . while they are in transit.") (emphasis in original); *Briskin v. Shopify Inc.*, No. 21-CV-06269-PJH, 2026 WL 161441, at *5-7 (N.D. Cal. Jan. 21, 2026); *R.C. v. Sussex Publishers, LLC*, No. 24-CV-02609-JSC, 2025 WL 948060, at *7-8 (N.D. Cal. Mar. 28, 2025) (dismissing § 631 claim where technology views, reads, and processes data only after it is stored). Here, the FAC pleads only that the Third Parties capture data and then put it to later use—identity resolution, behavioral profiling, recommender optimization, and audience-based advertising, FAC ¶¶ 114, 200, 213, 225, 240, 254—which confirms that any "reading" of contents occurs after acquisition, not while the communications are in transit. That Plaintiff labels the transmissions "real time" and "contemporaneous," FAC ¶¶ 108, 109, does not cure the defect, because contemporaneous timing does not convert a separately addressed, browser-generated request into the reading of a different communication in transit.

Put simply, CIPA (and especially § 631(a)) "is ill-suited for application to internet communications." *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1119 (N.D. Cal. 2025). "[R]egardless of whether CIPA could, in some circumstances, impose criminal liability on website operators and data analytics firms for the transmission of information about web traffic and the subsequent use of that information, it would not be appropriate to interpret the 'in-transit' requirement of Section 631(a) so broadly as to cover the conduct at issue here." *Id.*

**C. Plaintiff's Derivative Third- and Fourth-Clause Theories Fail.**

Plaintiff's remaining theories—that Hobby Lobby "used" intercepted information (third clause) and "aided" or "conspired with" the Third Parties (fourth clause)—cannot survive without a predicate violation of one of the first two clauses. The third clause reaches only the use of information "obtained" through a first- or second-clause violation, and the fourth clause reaches only one who aids another "to unlawfully do . . . any of the acts" the first three clauses prohibit. Cal. Penal Code § 631(a). Because Plaintiff fails to plead a viable second-clause violation, his derivative claims necessarily fail. *See Esparza v. Gen. Digit. Inc.*, No. CV 23-8223-KK-AGRx, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024) ("a plaintiff alleging a CIPA violation must adequately allege a violation under one of the first three clauses of Section 631(a)"); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021) (no fourth-clause liability absent an underlying violation); *R.C. v. Sussex*

*Publishers,* 2025 WL 948060, at *7 . Plaintiff's effort to manufacture an underlying violation by alleging that the Third Parties used the data for "their own independent commercial purposes," FAC, ¶¶ 14, 55, 113, 200, 213, 225, 240, 254, does not cure these defects: that conclusory label does not establish that any Third Party read protected contents while in transit, and it does not transform Hobby Lobby—a party to the communications that authorized the Trackers as part of the Website's ordinary functionality—into a third-party eavesdropper. Where a website operator knowingly integrates third-party tools, the resulting transmissions are authorized by a party to the communication and do not constitute an unlawful interception.

## V. Section 638.51 is Inapplicable to Website Advertising and Analytics.

Plaintiff's third cause of action under Cal. Penal Code § 638.51 fails for three independent reasons: (i) the Trackers are not "trap and trace devices" or "pen registers" under CIPA, (ii) CIPA's pen register provisions do not apply to website tracking, and (iii) the rule of lenity compels narrow construction.

### A. The Trackers are Not a "Trap-and-Trace Device" or a "Pen Register" Under CIPA.

CIPA defines a "trap and trace device" and a "pen register" as a device or process that captures, records, or decodes "dialing, routing, addressing, or signaling" ("DRAS") information of incoming or outgoing communications, respectively, "but not the contents of a communication." Cal. Penal Code § 638.50(b)-(c). If a device collects the contents of a communication, it ceases to be a trap-and-trace device or pen register. *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 851-52 (N.D. Cal. 2025). The Ninth Circuit has distinguished between "contents"—the intended message conveyed by a communication—and "record" information generated in the course of the communication. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014).

Plaintiff's CIPA theory is not only internally contradictory, **but Plaintiff also affirmatively pleads that the Trackers do not collect DRAS information**. Pen registers and trap-and-trace devices, by definition, capture only non-content DRAS information. Cal. Penal Code § 638.50(b)-(c). Yet Plaintiff simultaneously alleges that the Trackers captured the "content" of his communications for purposes of his § 631, intrusion upon seclusion, and constitutional privacy claims. FAC, ¶ 13. *See also id.* at ¶¶ 197, 210, 223, 235, 249 ("Beyond the dialing, routing,

addressing, and signaling information [the Trackers] also capture and transmit to [third parties] the substantive content of users' communications with the Website."). Plaintiff cannot have it both ways. *Napear v. Bonneville Int'l Corp.*, 669 F. Supp. 3d 948, 964 (E.D. Cal. 2023) (declining to "parse a distinction between" contradictory allegations). The content/non-content line is doctrinally dispositive, and it independently defeats Plaintiff's CIPA theory. Under the Ninth Circuit's decision in *Zynga*, "contents" means "the intended message conveyed by the communication," while non-content record information is limited to the bare mechanical routing data generated in the course of transmission. 750 F.3d at 1106. If a device captures content, it is by definition not a pen register or trap-and-trace device. Cal. Penal Code § 638.50(b)-(c); *Mitchener*, 2025 WL 2272413, at *5. Plaintiff cannot plead around that statutory ceiling.

It gets worse. According to Plaintiff himself, "[b]ecause the Trackers capture, acquire, and transmit . . . the substantive contents of users' electronic communications with the Website . . . the Trackers function, as to such communication contents, as instruments of unauthorized interception of the contents of electronic communications within the meaning of California Penal Code § 631 and 18 U.S.C. § 2511. *These technologies do not collect mere addressing or signaling metadata generated by the act of transmission; they capture the substance, purport, and meaning of the communications themselves*." FAC, ¶ 15 (emphasis added). Plaintiff has affirmatively pleaded that the Trackers do not collect the very information that the statute requires a device to collect in order to qualify as a pen register or trap and trace device.

After claiming the Trackers "do not collect mere addressing or signaling metadata," Plaintiff attempts to save his § 638.51 claim through a self-imposed "data segregation" framework. FAC, ¶¶ 67, 70. He argues that certain data elements are pleaded as DRAS Information (supporting § 638.51) while others are pleaded as Communication Contents (supporting § 631 and ECPA), and that "[n]o data element is pleaded as both DRAS Information and Communication Contents." *Id.* at ¶ 70.This is a pleading artifice that cannot override the statutory text. What matters is not whether a plaintiff labels certain outputs as contents, but whether the device *itself* collected both. And here, Plaintiff pleads that the same Trackers collect both forms of data while simultaneously pleading that the Trackers do not collect non-content DRAS information. Plaintiff attempts to have his cake and eat it

too by manufacturing a novel and unworkable definition that has never been endorsed by the Legislature or California courts. Where Plaintiff alleges that the same Trackers capture both content and non-content information, the devices are not pen registers or trap-and-trace devices regardless of how Plaintiff labels individual data fields. Either way, this defect defeats Plaintiff's § 638.51 claim.

**B. CIPA's Pen Register Provisions Do Not Apply to Website Tracking.**

Plaintiff's CIPA claim independently fails because § 638.51 regulates telephonic surveillance, not website analytics. *Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *2 (Cal. Super. Ct. Sept. 9, 2024) (the statute's "legislative purpose . . . [was] to authorize law enforcement to seek orders for telephone surveillance"). *See* Cal. Penal Code §§ 638.52-638.53 (providing procedures for "peace officers" seeking such orders); read in context, § 638.51 operates as a constraint on law enforcement—the only entity authorized to seek a pen register court order. No published California appellate authority extends § 638.51 to website tracking, and the weight of state court authority holds that CIPA does not reach the tools alleged here. CIPA's pen register provisions originated in Assembly Bill 929, enacted in 2015. The legislative history demonstrates the Legislature understood "pen registers" and "trap and trace devices" as law enforcement tools for recording telephone numbers: "One of the tools available to law enforcement is called a 'pen register' which allows law enforcement officers to record all outgoing numbers from a particular telephone line." *Schallert v. Orkin LLC*, No. 24STCV31244, 2025 WL 4332757, at *4 (Cal. Super. Ct. L.A. Cty. Dec. 15, 2025). "Nowhere in that history is there any indication, whatsoever, that the Legislature . . . intended 'trap and trace' devices … to apply to website tracking software." *Id*.

The statutory structure confirms this reading. Section 638.52, which governs court orders for pen registers, requires an application specifying "[t]he number" and "physical location of the telephone line to which the pen register or trap and trace device is to be attached." Cal. Penal Code § 638.52(d)(3). "This strongly suggests that section 638.51 applies to telephone lines, not websites, because websites do not have lines, physical locations, or numbers." *Scharon v. Paramount Global*, No. 25STCV10585, 2025 WL 2996812, at *1 (Cal. Super. Ct. L.A. Cty. Oct. 3, 2025). The specific

statutory terms—”originating number,” “dialing,” “routing”—all “concern telephone use only.” *Schallert*, 2025 WL 4332757, at *6. Under *noscitur a sociis* and *ejusdem generis*, “these later-itemized items must be read in light of the statute’s more specific words, which plainly direct the statute to things similar to an ‘originating number’ or ‘dialing’ information—i.e., incoming telephone calls.” *Id*. Pending legislation, SB 690, further confirms that “CIPA was not intended to apply to website tracking tools. Instead, such conduct is intended by the Legislature to be covered by the CCPA[.]” *Rodriguez v. Ink America Int’l Group LLC*, No. 25STCV15350, 2025 WL 4034985, at *4 (Cal. Super. Ct. L.A. Cty. Dec. 10, 2025).

Multiple California state courts have reached this conclusion. *See id*. at *3 (“CIPA’s structure and history indicate that its pen-register provisions were aimed at telephonic-style surveillance, not at the routine operation of commercial websites”); *Sanchez v. Cars.com Inc*., No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Ct. L.A. Cty. Jan. 27, 2025) (same). If the California Legislature wanted to apply § 638.51 to website tracking tools, “it could do so by amending such provision.” *Rodriguez v. Ink America*, 2025 WL 4034985, at *3. This Court should not stretch a criminal statute to cover conduct the Legislature never intended to reach. *See Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Ct. L.A. Cty. Mar. 13, 2024) (“[P]ublic policy strongly disputes” an interpretation that would “render[] every single entity voluntarily visited by a potential plaintiff . . . as a violator.”). To hold otherwise would risk the absurd result of requiring every website operator to obtain a court order to operate.

### C. The Rule of Lenity Compels a Narrow Construction of § 638.51.

Even if § 638.51 could be read to encompass website tracking, the rule of lenity forecloses that reading. CIPA carries criminal penalties, Cal. Penal Code § 638.51(c), and under California law, “[the defendant] must be given the benefit of every reasonable doubt as to whether the statute [applies] to him.” *In re Zerbe*, 60 Cal. 2d 666, 668 ( 1964). When “two reasonable interpretations of the same provision stand in relative equipoise,” the narrower reading controls. *Smith v. LoanMe, Inc*., 11 Cal. 5th 183, 202 (2021) (citation omitted).

The acknowledged split in authority confirms that § 638.51 is susceptible to multiple reasonable interpretations. *Sanchez*, 2025 WL 487194, at *3-4 (CIPA pen register provisions are

generally limited to telephone technology, not internet, and when the court is not persuaded by either side's cited authority, plaintiffs fail to state a cause of action). Plaintiff's theory would subject Hobby Lobby and thousands of other companies to per se criminal liability for conduct the California Legislature has already regulated through the CCPA. If CIPA categorically prohibits collecting IP addresses and browsing data through website tracking tools, then the CCPA's provisions permitting reasonable collection of such data are a nullity—"[t]hat would be an improper way to interpret and harmonize California law." *Scharon*, 2025 WL 2996812, at *2. The rule of lenity requires this Court to resolve the ambiguity in Hobby Lobby's favor.

## VI. <u>Plaintiff Fails to State a Claim for Intrusion Upon Seclusion or Violation of California's Constitutional Right to Privacy.</u>

Plaintiff alleges violations of the California Constitution (Article I, § 1) and intrusion upon seclusion. Both claims require a showing that Hobby Lobby's conduct was "highly offensive to a reasonable person." *Hill v. Nat'l Collegiate Athletic Assn*., 7 Cal. 4th 1, 35-37 (1994); *Popa*, 153 F.4th at 791. Under the California Constitution, "[a]ctionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 37. "This district sets a high bar for the requisite intrusion." *In re Google, Inc. Privacy Policy Litig*., 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (quotation marks omitted). For intrusion upon seclusion, a plaintiff must demonstrate "an objectively reasonable expectation of seclusion or solitude" and that the defendant "penetrated some zone of physical or sensory privacy" or "obtained unwanted access to data about" the plaintiff. *Id*. at 987. The FAC's sparse allegations do not satisfy these elements.

At the threshold, because Plaintiff fails to plead a CIPA violation, he likewise fails to plead a legally protected privacy interest under the California Constitution. *Williams*, 2022 WL 17869275, at *5 ("Because plaintiff did not plausibly plead wiretapping, plaintiff likewise did not plausibly plead a protected privacy interest under the California Constitution").

Moreover, each strand of Plaintiff's privacy theory founders on the threshold requirement of a legally protected privacy interest. California's constitutional privacy right protects "informational privacy" in matters of a "sensitive and confidential" character—financial, medical, sexual, and political information—not routine metadata generated when a consumer loads a public commercial

website. *Hill*, 7 Cal. 4th at 35-37. Plaintiff's IP address, browser fingerprint, timestamps, click paths, and on-site browsing sequence sit squarely on the "routine commercial behavior" side of that line. *See In re iPhone Application Litig*., 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012).

Hobby Lobby's conduct is not "highly offensive." "Courts in this district have held that data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hammerling v. Google, LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022); *Low v. LinkedIn Corp*., 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) ("[e]ven disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim."). Even assuming Plaintiff's religious-themed browsing activity were adequately pleaded as his own, the mere fact that a product name contains a religious word does not transform routine e-commerce metadata into constitutionally protected "religious information." Hobby Lobby's inventory is publicly listed on a commercial website; the names and prices of products a user views are not private religious beliefs. *In re iPhone Application Litig*., 844 F. Supp. 2d at 1063 (disclosure of device identifiers, personal data, and geolocation from iDevices not an egregious breach of social norms). The data Plaintiff alleges was collected here is far less sensitive than the information courts have already found insufficient.

Nor has Plaintiff alleged an objective or subjective expectation of seclusion. A user who browses a public commercial website necessarily transmits certain information, such as his IP address, browser details, user-agent information, page visit patterns, and clickstream to the site he has asked to respond to him. *See Sanchez v. L.A. Dep't of Transp.*, 39 F.4th 548, 556 (9th Cir. 2022) ("[A] person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.") (citation omitted). Beyond the inherent nature of web browsing, Hobby Lobby disclosed the collection and use of users' data via its Privacy & Terms, which Plaintiff agreed to by continuing to use the Website. He cannot now claim that he had a reasonable belief that collection would not occur. *See Smith v. Facebook, Inc*., 262 F. Supp. 3d 943, 955-56 (N.D. Cal. 2017) (collecting cases holding that consent bars a privacy claim). And, as discussed *supra*, Plaintiff is a tester who never expected his data to remain private. The California Supreme Court has held that "the plaintiff in an invasion of privacy case must have conducted himself or herself in a manner consistent with an actual

expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant." *Hill*, 7 Cal. 4th at 26. A plaintiff who voluntarily visits a Website with the hope of manufacturing litigation has not conducted himself in a manner consistent with an expectation of privacy.

Additionally, even if Plaintiff could state a constitutional privacy claim, the California Constitution does not provide a private right of action for money damages. *Clausing v. S.F. Unified Sch. Dist.*, 221 Cal. App. 3d 1224, 1238 (1990). The Court should dismiss Plaintiff's prayer for money damages on this independent basis.

**VII. <u>Plaintiff's UCL Claim Fails for Lack of Statutory Standing and Because the Predicate Claims Fail.</u>**

To prevail on a UCL claim, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business . . . that is the gravamen of the claim." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011). Plaintiff can show neither element.

First, Plaintiff lacks statutory standing. The economic injury must be "real," "concrete," "particularized," and "not abstract." *Cal. Med. Assn. v. Aetna Health of Cal. Inc.*, 14 Cal. 5th 1075, 1087-88 (2023). Plaintiff recites that he lost money or property but alleges no facts supporting an actual economic injury. He claims Hobby Lobby monetized his data into a revenue stream resulting in "misappropriation-like injury" but concedes this did not cause a "direct financial loss," FAC, ¶130. His UCL claim merely asserts that his personal data has "measurable economic value" and that "unauthorized exfiltration and commodification" of his data "enrich[ed] third parties." *Id*. at ¶ 300.

These allegations fail as a matter of law. A conclusory statement that Plaintiff lost "money or property" does not establish a concrete economic injury. *Day v. Cal. Lutheran Univ.*, No. 22-55825, 2023 WL 4893650, at *2 (9th Cir. 2023); *Wittbecker v. Cupertino Elec., Inc.*, No. 20-cv-06217-BLF, 2021 WL 1400959, at *4 (N.D. Cal. 2021) ("[A]n unexplained reference to 'lost money or property,' and a request for 'restitution' - are insufficient to describe a concrete and particularized harm.") (citations omitted). And private information does not constitute "money or property" under the UCL. *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 804 (N.D. Cal. 2019) ("Facebook may have gained money through its sharing or use of the plaintiffs'

information, but that's different from saying the plaintiffs lost money."); *see also Doe I v. Google LLC*, 741 F. Supp. 3d 828, 845 (N.D. Cal. 2024) ("loss of personal data is also not sufficient to demonstrate an economic injury").

Second, Plaintiff has not alleged facts supporting any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code, § 17200. Plaintiff asserts the "unlawful prong" was violated by the Trackers' real-time capture of PII such as IP address, browser details, visited URLs, referrer paths, timestamps, and interaction events. FAC, ¶¶ 297-98. He also asserts the "fraudulent prong" was violated by Hobby Lobby's failure to disclose its data sharing practices. *Id.* at ¶ 299. But the claim fails because the predicate claims fail. *Hammerling*, 615 F. Supp. 3d at 1094 ("If the predicate claims fail, the UCL claim also fails") (citation omitted). As shown in Section (C)(1), *supra*, Hobby Lobby's Privacy & Terms disclosed the use of the Trackers immediately upon a user landing on the Website. Where an act or practice is clearly disclosed, it is not deceptive. Furthermore, such actor or practice is not "immoral, unethical, [or] oppressive," nor does its impact on the victim outweigh "the reasons, justifications, and motives" of the defendant. *Davis v. HSBC Bank Nev., NA*., 691 F.3d 1152, 1169 (9th Cir. 2012). Plaintiff's allegations are thus insufficient under any test for "unfairness" applied by courts in this District. *See Price v. Apple, Inc*., No. 21-cv-02846-HSG, 2022 WL 1032472, at *4 (N.D. Cal. Apr. 6, 2022) (Gilliam, J.) (dismissing UCL unfairness claims after applying three tests).

## VIII. <u>Plaintiff's Unjust Enrichment Claim Fails Because California Does Not Recognize It as a Separate Cause of Action.</u>

California does not recognize a separate cause of action for unjust enrichment. *Abuelhawa v. Santa Clara Univ*., 529 F. Supp. 3d 1059, 1070 (N.D. Cal. 2021). Plaintiff's unjust enrichment claim is also duplicative of his statutory and tort claims, as it rests on the same alleged conduct. *Smith v. Ygrene Energy Fund*, Inc., No. 17-cv-01258-LB, 2017 WL 3168519, at *12 (N.D. Cal. July 26, 2017) (dismissing unjust enrichment claim "based on the same conduct as the statutory and tort claims"). This claim should be dismissed.

## <u>CONCLUSION</u>

For each of the foregoing reasons, the Court should grant Defendant's Motion and dismiss the FAC in its entirety with prejudice.

DATED: June 5, 2026.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ *Benjamin W. Perry*
Sean P. Nalty
Benjamin W. Perry (admitted *pro hac vice*)

*Attorneys for Defendant Hobby Lobby Stores, Inc.*